UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60164-Civ-ALTONAGA
MAGISTRATE JUDGE P.A. WHITE

JESSE RACENE,                          :

    Petitioner,                    :

v.                                     :         REPORT OF
                                                 MAGISTRATE JUDGE
WALTER A. McNEIL,                      :

    Respondent.                    :
_____

## I. Introduction

Jesse Racene, a state prisoner confined at Century Correctional Institution at Century, Florida, has filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his conviction entered in Case No. 02-11406 in the Circuit Court of the Seventeenth Judicial Circuit of Florida at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with supporting exhibits, the Court has the petitioner's response to an order regarding the limitations period with attached exhibit, the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply with supporting appendix.

## II. Claims

Racene alleges that he received ineffective assistance of trial counsel, because his lawyer failed to (1) file a motion to

suppress his various statements made to the police, (2) challenge the authenticity and admissibility of the surveillance video recording, and (3) file an adequate motion for judgment of acquittal.

### III. Procedural History

Racene was convicted after jury trial of the offense of robbery with a weapon, and he was sentenced as an habitual offender to a term of imprisonment of thirty years and one day and as a prison releasee reoffender to a minimum mandatory term of thirty years. (DE# 12; Ex. 1). After counsel filed a timely notice of appeal from the conviction and sentence, appointed appellate counsel filed a motion to withdraw and a memorandum brief pursuant to Anders v. California, 386 U.S. 738 (1967). (DE# 12; Ex. 1, 2). Counsel stated that he was unable in good faith to argue that any point of reversible error was present in the record. Id. Racene did not file a pro se statement of points and, therefore, did not present any grounds in support of the appeal. (DE# 12; Ex. 2). Racene's conviction and sentence were per curiam affirmed by the Florida Fourth District Court of Appeal in a decision without written opinion. Racene v. State, 861 So. 2d 1167 (Fla. 4th DCA 2003)(table).

Approximately four months after the direct appeal proceeding had concluded, Racene filed in the trial court a pro se motion to correct illegal sentence, claiming that his prison releasee reoffender sentence was unlawful pursuant to state law principles. (DE# 12; Ex. 11). After the state had filed its response with supporting exhibits, the trial court entered a written order, summarily denying the motion. (DE# 12; Ex. 12). In a written opinion issued by the Florida appellate court, the trial court's ruling was affirmed. (DE# 12; Ex. 13). See also Racene v. State,

2

984 So. 2d 555 (Fla. 4 DCA 2008)(holding that the issue was procedurally barred from review in a Rule 3.800(a) motion, because the challenge should have been raised at sentencing, on direct appeal, or possibly by a Rule 3.850 ineffective assistance of counsel claim and the time for those remedies had passed).

While the Rule 3.800 proceeding remained pending, Racene filed a <u>pro se</u> motion for postconviction relief with supporting memorandum of law pursuant to <u>Fla.R.Crim.P</u>. 3.850, raising numerous claims of ineffective assistance of trial counsel which included the three grounds presented in this federal petition. (DE# 15; Ex. 3). The state filed a response with supporting exhibits, asserting that Racene was not entitled to postconviction relief in that his claims were meritless. (DE# 15; Ex. 4). In a written order, the trial court summarily denied relief for the reasons asserted in the state's response as to all claims except for a ground not relevant here for which an evidentiary hearing was ordered.[1] (DE# 15; Ex. 5). After conducting an evidentiary hearing, relief was also denied as to the ground not raised here with the trial court finding former trial counsel's testimony credible and Racene's testimony incredible. (DE# 15; Exhibit 6, 7). The denial of postconviction relief was affirmed by the Florida Fourth District Court of Appeal in a *per curiam* decision without written opinion. (DE# 15; Ex. 10). <u>See also</u> <u>Racene v. State</u>, 955 So.2d 583 (Fla. 4 DCA 2007). Approximately seven months after all state court proceedings had concluded, Racene came to this Court filing the instant petition pursuant to 28 U.S.C. §2254.

---

[1] Racene received an evidentiary hearing on his claim that trial counsel rendered ineffective assistance when he failed to communicate a plea offer extended by the state. (DE# 15; Ex. 5). Relief was denied on this claim after evidentiary proceedings in that the trial court found former trial counsel's testimony credible and Racene's testimony incredible. (DE# 15; Exhibit 6, 7).

IV. <u>Threshold Issues - Timeliness, Exhaustion and Procedural Bar</u>

The respondent correctly does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). Further, the respondent properly concedes that the claims raised in this federal petition have been properly exhausted before the state courts, <u>see</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[2]

V. <u>Standard of Review</u>

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

---

[2]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert. denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial; <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979), or, in the case of a challenge to a sentence, by the filing of a Rule 3.800 motion, and an appeal from its denial. <u>See Caraballo v. State</u>, 805 So.2d 882 (Fla. 2 DCA 2001).

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id.* at 409-11. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing

evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, ____ U.S. ____, 128 S.Ct. 2053 (2008).

## VI. <u>Facts</u>

The facts of this case as revealed by the evidence admitted at trial can be summarized as follows.[3] At approximately 9:30 P.M., Racene, while traveling as a passenger on a public bus, robbed a fellow passenger at knife point. The victim testified at trial that while he was seated in the rear of the bus, Racene approached him and demanded $3.00. The victim first refused to give Racene any money, but the victim ultimately complied with the demand after Racene threatened to cut the victim's throat with the knife that he was holding. The victim immediately proceeded to the front of the bus and reported the incident to the bus driver. Racene followed the victim to the front of the bus and then followed the victim off the bus when the victim exited the bus. Seeing that Racene followed the victim, the bus driver instructed the victim to get back on the bus, which he did, and the driver closed the door, leaving Racene at the bus stop. The driver then radioed dispatch to report the robbery and he provided a description of the perpetrator. The victim also telephoned the police from his cellular telephone to report the robbery. Broward Sheriff's Officer Deputy Morales was dispatched to the scene and he investigated the robbery, speaking with both the victim and bus driver.

Broward Sheriff's Officer Deputy Trevor Goodwin also responded to the scene and found the parked bus. Deputy Goodwin did not stop when he saw the parked bus, and instead, drove around the immediate

---

[3]For a more detailed recitation of the facts of the case with complete references to the trial transcript, see the *Anders* briefs filed in the direct appeal proceeding. <u>See</u> DE# 12; Ex. 1 <u>See also</u> Trial Transcript. (DE# 12; Ex. 15).

area. Within five or six minutes, and within two blocks of the bus stop, he saw someone matching the description of the robber provided in the BOLO. Deputy Goodwin ordered Racene to stop and get on the ground, but he refused to comply with the orders. Deputy Goodwin ultimately placed Racene in custody after a physical struggle. Once Racene was apprehended, a search was conducted and a pocket knife and $5.00 were found on Racene's person. Deputy Goodwin testified that Racene repeatedly stated that he had not robbed anyone. Deputy Morales transported the victim to the area where Racene had been apprehended, and he immediately identified him as the robber. Racene had been injured during his apprehension and he was taken to a local hospital. Deputy John Donadio met Racene in the emergency room and, after advising Racene that he was investigating a robbery and advising Racene of his constitutional rights pursuant to *Miranda*,[4] he interviewed Racene. Racene orally waived his rights and denied committing a robbery. He also told the officer that the knife found on his person was for the purpose of cleaning his fingernails. The bus was equipped with three video cameras, one directly in front of the bus with a view of the bus from front to back, one midway on the bus that had a view of the rear exit door, and one over the bus driver's head that had a view the front door. Portions of the surveillance videotape recording of the incident were admitted into evidence at trial.

## VII. Discussion

Racene alleges that he received ineffective assistance of trial counsel for three reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

suffered prejudice as a result.[5] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

Racene claims in ground one that his lawyer rendered ineffective assistance when he failed to file a motion to suppress his statements to the police. Specifically, he alleges that his statements made to Detective Goodwin that he did not rob anyone and his statements at the hospital made to Detective Donadio should have been suppressed as violative of his constitutional rights pursuant to *Miranda* and violative of his Fifth Amendment rights as

---

[5]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

they were unlawfully coerced. This claim is meritless.

The record reveals the following. Deputy Goodwin testified in pertinent part during his direct examination:

> Q.   Do you recall, once you made contact with [Racene], did he make any spontaneous statement to you?
>
> A.   He kept saying what did he do wrong, basically.
>
> Q.   Do you recall him making a statement to you in reference to that he didn't rob anybody?
>
> A.   Yes.
>
> Q.   Was that, when did he say that to you?
>
> A.   Probably within two, three minutes after he was in handcuffs.
>
> Q.   At the point he said to you he didn't rob anybody, had you given him information about why it was you were taking him into custody?
>
> A.   No.

(Trial Transcript at 180-81)(DE# 15; Ex. 15). Detective Donadio testified in relevant part during his direct examination:

> Q.   Was [Racene] transported to the hospital?
>
> A.   Yes.
>
> Q.   Is that where you made first contact with him?
>
> A.   Yes.
>
> Q.   As a result of making contact with him that night, did he make any spontaneous statements, requests, inquiries of you?
>
> A.   Yes, he did.
>
> Q.   What did he say?
>
> A.   I met him. He was in the ER room of University Hospital. I went in, introduced myself to him. Advised him of Miranda. He asked me why he was here. I told him I was

9

> investigating a robbery. He said what robbery. Explained to him what happened. And he said I didn't rob anybody. And I said, well, here is what happened, I explained to him again. I said there was a knife involved in it. He said I had a knife. I took it out to clean my fingernails. That was the extent of our conversation.
>
> *     *     *
>
> Q.   The questioning about why he was there and all of those things came from [Racene]; is that correct?
>
> A.   That's correct.
>
> Q.   And that wasn't in response to any questioning by you?
>
> A.   No.

Id. at 221-22.

*Miranda* forbids the prosecution from using statements made by a defendant during a custodial interrogation unless the defendant had first been advised of his constitutional rights. Miranda, 384 U.S. 436, 478-79 (1966). The record reveals that the initial alleged incriminating statements in this case were not improperly compelled by the officer's question in a custodial setting but, on the contrary, was spontaneously volunteered by Racene within minutes after he was restrained in handcuffs. The subsequent alleged incriminatory statements were also spontaneously volunteered by Racene without having been questioned by the detective. The safeguards of *Miranda* are not extended that far. Voluntary and spontaneous comments by an accused, even after *Miranda* rights are asserted, are admissible evidence if the comments were not made in response to government questioning. See Cannady v. Dugger, 931 F.2d 752, 754 (11 Cir. 1991) and cases cited therein. Since Racene's statements can be deemed spontaneous statements that were not the result of interrogation by the officers, the statements were not offered in violation of *Miranda*, and not lawfully subject to challenge on this basis. Racene's

assertion that Deputy Donadio's failure to obtain an executed written waiver of his *Miranda* rights rendered the statements made to the officer subject to suppression pursuant to *Miranda* is, therefore, also unavailing. Moreover, Detective Donadio testified at trial that he properly advised Racene of all his constitutional rights pursuant to *Miranda*, and that he waived those rights, although he was injured and possibly intoxicated at the time. Id. at 222-23.

Regarding Racene's allegation that any or all of his statements were the product of unlawful coercion, it is well settled that a confession must be the product of rational intellect and free will rather than being induced by conduct of state officials which might overbear the defendant's will to resist, thus constituting coercion. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986); Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Townsand v. Sain, 372 U.S. 293 (1963); Lynumn v. State of Illinois, 372 U.S. 528 (1963); Rogers v. Richmond, 365 U.S. 534 (1961); Brown v. Mississippi, 297 U.S. 278 (1936). In determining whether a defendant's will has been overborne, the Court must consider the totality of all surrounding circumstances, including both the characteristics of the accused and the details of the interrogation. Schneckloth v. Bustamonte, supra at 226. The fact that a suspect is under the influence of drugs or medication will not necessarily render a confession involuntary if the suspect was not incapacitated. See United States v. George, 987 F.2d 1428, 1430-31 (9 Cir. 1993). Although the Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions, there is no evidence whatever in the record of coercive or abusive tactics by the police. Racene's assertions in this federal proceeding that his statements to Deputy Goodwin were made out of fear during his apprehension where the

11

officer had shouted at him and used physical force are wholly conclusory assertions with no record support whatever and therefore Racene is not entitled  to relief.[6] While there was testimony that Racene may have been under the influence of alcohol at the time that he made his statements, there is no support in the record that he was so intoxicated that he was unaware of what was transpiring and/or incoherent. The fact that Racene was possibly under the influence of alcohol at the time of the meeting at the hospital with the deputy was only a factor that the jury could consider regarding the weight to give the statement and such fact did not go to the admissibility of the statement. Moreover, the trial court clearly instructed the jury with regard to how any out-of-court statements made by Racene should be considered by the jury and that such statements could be disregarded if found not freely and voluntarily made.[7] See Trial Transcript at 267-68.

Since the statements made by Racene were not made in violation

---

[6]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

[7]Specifically, the trial court instructed the jury as follows:

A statement claimed to have been made by the defendant outside of court has been placed before you. Such a statement should always be considered with caution and be weighed with great care to make certain it was freely and voluntarily made. Therefore, you must determine from the evidence that the defendant's alleged statement it was knowingly, voluntarily and freely made.

In making this determination, you should consider the total circumstances, including, but not limited to, number one, whether the defendant, whether when the defendant made the statement he had been threatened in order to get him to make it; and number two, whether anyone had promised him anything in order to get him to make it.

If you conclude the defendant's out-of-court statement was not freely and voluntarily made, should disregard it.

See Trial Transcript at 267-68.

of *Miranda*[8] and not unlawfully compelled, they were not lawfully subject to suppression. Thus, no constitutional violation occurred here given the fact that there was no legal basis upon which to support a motion to suppress the cocaine. The fact that defense counsel failed to seek the suppression of the statements pursuant to the Fifth Amendment or otherwise does not indicate that counsel's performance was constitutionally ineffective in that the above-recited facts indicate that he would not have been successful. Counsel has no duty to raise issues which have little or no chance of success. See Knowles v. Mirzayance, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009)(the law does not require counsel to raise every available non-frivolous defense). See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). Racene has failed to demonstrate that counsel's performance was deficient. Strickland, supra.

Even if trial counsel's performance could somehow be viewed as deficient for failing to file a motion to suppress, Racene suffered no prejudice when counsel did not do so. The subject statements were not inculpatory, and could have reasonably been perceived by the jury as exculpatory in that Racene repeatedly denied committing the armed robbery and he further provided a lawful explanation for

---

[8]Racene's claim that the *Miranda* warnings given to him were defective in that he was not advised of his right to have counsel present during questioning is contradicted by the record and, even if true, would not impact the outcome of this federal proceeding. See Trial Transcript at 222-23. It is noted that the Florida Supreme Court in State v. Powell, 998 So.2d 531 (Fla. 2008) held that the *Miranda* warning given in that case was defective because the defendant was told only that he had a right to counsel, not that he had a right to counsel before being interrogated and during interrogation. Id. at 535. The Supreme Court has granted certiorari review in *Powell* and the case is currently pending before the Court with oral argument having been recently conducted. See Florida v. Powell, 2009 WL 4571554 (December 7, 2009).

possessing a pocket knife. The statements were, therefore, beneficial to the defense which was that the victim misperceived the situation and that Racene was merely panhandling and wanted to exchange the knife for money. During closing argument, trial counsel attempted to persuade the jury that there existed reasonable doubt that Racene had committed the armed robbery and, in doing so, relied upon Racene's statements in which he had repeatedly denied committing the offense.[9] See Trial Transcript at 241. Counsel's decision not to seek the suppression of the now-challenged statements to support the defense presented was a reasonable strategic decision.

Finally, Petitioner has not shown a reasonable probability that the outcome of the trial would have been different had the statements been suppressed. The evidence admitted at trial was overwhelming against Racene. The victim unequivocally testified that he was the victim of an armed robbery while a passenger on a bus and he positively and unequivocally identified Racene as the robber both before trial and at the time of the trial. Id. at 189-201. The bus driver testified with regard to the incident. Id. at 161-72. Racene was apprehended not long after the robbery in the vicinity of where he had exited the bus, he resisted arrest, and he

---

[9]Specifically, trial counsel stated:

There is nothing that [Racene] says that is incriminating.

He talks about a knife. Doesn't talk about the context of it.

I'm suggesting if you look at the video, it is consistent with Mr. Racene trying to trade the knife for the money, as a pan handler consistent with that.

\*          \*          \*

Again Detective Goodwin corroborated what Donadio said Mr. Racene said. Mr. Racene said I didn't rob anyone. They only found $5 on him.

(Trial Transcript at 241).

14

was found with a knife and money on his person. Id. at 173-81. A
videotape of the incident was played for the jury. Id. at 196-98.
Thus, the failure to file a motion to suppress was not prejudicial
to Racene in that, even if the statements had been suppressed, the
otherwise competent evidence admitted at trial supported Racene's
conviction in this case. Since Racene cannot show that there is a
reasonable probability that, but for the alleged error, the result
of the proceeding would have been different, trial counsel's
performance cannot be deemed constitutionally ineffective.
Strickland, 466 U.S. at 693-94 (holding that to establish prejudice
it is not enough for the petitioner to show that the error had some
conceivable effect on the outcome of the proceeding). See also
Knowles v. Mirzayance, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173
L.Ed.2d 251 (2009)("To establish prejudice, the defendant must show
that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to
undermine confidence in the outcome.")(internal quotation marks and
citation omitted).

Racene claims in ground two that his lawyer rendered
ineffective assistance when he failed to challenge the authenticity
and admissibility of the surveillance video tape recordings. This
argument is also meritless. Review of the trial transcript
indicates that before the tape recording was played for the jury
during the victim's testimony, the victim testified that he had
reviewed the tape recording and that it fairly and accurately
depicted the incident on the bus. See Trial Transcript at 196.
While the videotape was playing, the victim described what was
occurring. Id. at 196-98. The bus driver testified about the video
recording system located on the bus and described the placement of
the three cameras. Id. at 168. He further testified that the tape

15

recordings of the incident were removed from the bus by an employee of the mass transit department. Id. at 168-69. William Sorrells, employed by Broward County Transit as the safety and training manager, testified at trial with regard to the video surveillance equipment located in the buses and what is recorded and when. Id. at 183-87. He further testified that he had responded to the subject bus after the robbery, he removed and took physical custody of the hard drive located on the bus, he made a video recording to view the incident, and he viewed that video recording. Id. at 183-88. He testified that he viewed the video recording to be admitted into evidence at trial and that was the same recording he had prepared from the hard drive removed from the subject bus. Id. at 187-88. Conseguently, there were no grounds in which to challenge authenticity and admissibility of the subject videotape recording. As indicated, there is no duty to raise issues which have little or no chance of success. See Knowles, 129 S.Ct. at 1422; Chandler, 240 F.3d at 917; Card, 911 at 1520.

Further, trial counsel again relied upon the videotape recording in an attempt to support the defense that there was no robbery committed here and that Racene was a mere panhandler. Trial counsel chose not to challenge the admission of the tape, but to rely on the tape recording to attack the credibility and reliability of the victim's testimony as to what had occurred. Trial counsel pointed out during his closing argument that the videotape recording, which the victim testified was an accurate depiction of the robbery, conflicted with the victim's testimony and description of the event to the police, especially with regard to the knife. See Trial Transcript at 236-43. He, therefore, attempted to demonstrate to the jury that reasonable doubt existed here by way of the videotape recording. It cannot be said that such a trial strategy was not reasonable under the circumstances of this

16

case.  See Knowles, 129 S.Ct. at 1420 ("Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.")(quoting Strickland, 466 U.S. at 689). See also Grayson v. Thompson, 257 F.3d 1194, 1216 (11 Cir. 2001) (stating that in order to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take); White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."). As was the prerogative of the jury, it chose to believe the strong evidence admitted by the state and the testimony of the state witnesses and reject the defense presented. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987).

In addition, for the identical reasons stated above, even if counsel should have challenged the videotape recording on the grounds alleged in the petition or otherwise,[10] Racene has not shown a reasonable probability that the outcome of the trial would have been different had the videotape recording not been admitted. There was other sufficient competent evidence to support the jury's verdict. Counsel's performance was, therefore, not constitutionally ineffective. Strickland, supra.

Racene alleges in ground three that he received ineffective assistance of trial counsel, because his lawyer failed to file an adequate motion for judgment of acquittal. He claims that counsel's motion was merely "bare bones." Racene is not entitled to habeas

---

[10]For example, Racene claims that the videotape recording admitted at evidence and played for the jury did not include all fifteen minutes of the recording, but had been edited; witness Sorrells had improperly edited the tape recording; Sorrells was not a qualified expert; etc.

corpus relief on this claim. In Florida, the courts do not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. <u>Lynch v. State</u>, 293 So.2d 44, 45 (Fla. 1974)(stating that "[w]here there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.") A defendant, in moving for a judgment of acquittal, admits not only the facts stated in the evidence admitted at trial, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. <u>Id</u>.

The record reveals that after the state had rested, defense counsel moved for judgment of acquittal, which motion was later renewed, arguing that the state had failed to meet its burden that Racene had committed robbery with a weapon, as indicated by the videotape recording. <u>See</u> Trial Transcript at 227-28, 230. The trial court denied the motion for judgment of acquittal. <u>Id</u>. at 328. Even if defense counsel's performance regarding the motion for judgment of acquittal could in any way be deemed deficient in that trial counsel did not support his argument with citations to caselaw and/or raise the specific arguments now-asserted by Racene in this federal proceeding, Racene is not entitled to relief because he has failed to satisfy the prejudice-prong of *Strickland*. Based upon the evidence admitted at trial, as summarized throughout this Report, and applicable Florida law, Racene was not entitled to a judgment of acquittal by the trial court. Contrary to Petitioner's assertion here the evidence admitted at trial clearly supported the jury's

18

verdict that he had committed robbery with a weapon in violation of Fla.Stat. §812.13(2)(b) (West 2000),[11] as charged.

Racene incorrectly believes that he was entitled to a judgment of acquittal as to robbery with a weapon in that the common pocketknife found on his person did not constitute a weapon, as defined under Florida law. In order to convict Powell of robbery with a weapon, the state was required to prove that the pocketknife was a weapon. The robbery statute does not define the various types of weapons which converts a simple robbery into more serious forms of the offense, therefore, the Florida courts look to Section 790.001(13), Florida Statutes which defines "weapon" as "any dirk, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife."

While the Florida courts, interpreting the definition of "weapon" under section 790.001(13), have held that a "common pocketknife" is not a "weapon" for the purposes of a possession offense, see L.B. v. State, 700 So.2d 370 (Fla. 1997), the courts have held however that an open blade of a pocketknife to the victim's throat makes that pocketknife a "deadly weapon." See Durden v. State, 743 So.2d 77, 77 (Fla. 1 DCA 1999). The courts have further held that whether an object is a "deadly weapon-i.e., whether it is 'likely to produce death or great bodily harm'-is a factual question to be answered by the jury in each case." Dale v.

---

[11]In Florida, robbery is defined as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla.Stat. §812.13(1) (West 2000). If in the course of committing the robbery the offender carried a weapon, then the robbery is a felony of the first degree. Fla.Stat. §812.13(2)(b).

State, 703 So.2d 1045, 1047 (Fla. 1997). Thus, the courts look to the way the pocketknife was used in order to determine whether it could be deemed a weapon. See also McCoy v. State, 493 So. 2d 1093, 1094-95 (Fla. 4 DCA 1986)(holding that evidence was sufficient to support jury conclusion that manner in which defendant used small pocketknife constituted assault with deadly weapon, even though state may have failed to introduce any evidence at trial that would establish pocketknife as deadly weapon per se); State v. Nixon, 295 So. 2d 121, 122 (Fla. 3 DCA 1974).[12] The subject pocketknife, as used in this case, clearly elevated the crime from simple robbery to robbery with a weapon. Accordingly, counsel's performance cannot be deemed constitutionally ineffective with regard to the motion for judgment of acquittal, as properly determined by the state courts. See Jackson v. Virginia, 443 U.S. 307 (1979); Smith v. White, 815 F.2d 1401 (11 Cir. 1987).

In conclusion, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. See Strickland v. Washington, 466 U.S. 668 (1984). Defense counsel made a reasonable investigation of the facts, was well-prepared for trial, conducted full and extensive cross-examination of the state's witnesses, made

---

[12]The Florida Third District Court of Appeal in *Nixon* stated as follows:

Obviously the legislature, by excepting common pocket knives from the category of weapons, the carrying of which would be a crime, did so in order that the carrying of a common pocket knife by a citizen should not constitute a crime, in view of he general custom of people to carry such knives for convenience and useful purposes unrelated to any criminal intent or activity. But that does not mean that a pocket knife cannot be a deadly weapon. Whether an object used as a weapon in an assault is a deadly weapon is a factual question to be resolved by the finder of facts at trial, and is to be determined upon consideration of its likelihood to produce death or great bodily injury. It is common knowledge that in certain circles pocket knives are used by assailants with deadly weapon effect as frequently, if not more frequently than are firearms (citations omitted).

See State v. Nixon, 295 So. 2d 121, 122 (Fla. 3 DCA 1974).

appropriate objections, moved for judgment of acquittal, and presented a forceful and compelling closing argument. Racene has failed to show that he was deprived of constitutionally effective assistance of counsel for any or all of the reasons alleged above. It is apparent that defense counsel presented the best possible defense under the circumstances of this case, and the fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective.

Based upon the foregoing, the state trial court's denial of relief in the postconviction proceeding on the ineffective assistance of trial counsel claims raised here as grounds one, two, and three, which decision was affirmed on appeal, see Racene v. State, 955 So.2d 583 (Fla. 4 DCA 2007), was clearly proper and should not be disturbed in this federal proceeding. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles v. Mirzayance, ____ U.S. ___, 129 S.Ct. 1411, 1420; Rutherford v. Crosby, 385 F.3d 1300, 1309 (11 Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference-this one to a state court's decision-when we are considering whether to grant federal habeas relief from a state court's decision."), cert. denied, 544 U.S. 982, 125 S.Ct. 1847, 161 L.Ed.2d 738 (2005).

VIII. Evidentiary Hearing

Petitioner appears to request an evidentiary hearing as to his ineffective assistance of trial counsel claims. To be entitled to an evidentiary hearing on habeas claims, the petitioner must allege facts that, if proved at the hearing, would entitle him to relief. See Schriro v. Landrigan, 550 U.S. 465, 474-75, 127 S.Ct. 1933, 1940 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district

court is not required to hold an evidentiary hearing). For reasons discussed herein, an evidentiary hearing is not required for the disposition of this case. Id. See also Atwater v. Crosby, 451 F.3d 799, 812 (11 Cir. 2006)(addressing petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim."). Racene has failed to demonstrate the existence of any factual dispute that warrants a federal evidentiary hearing as to any of his claims.

## IX. Conclusion

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 22nd day of December, 2009.

UNITED STATES MAGISTRATE JUDGE

cc:  Jesse Racene, Pro Se
     DC# 188165
     Century Correctional Institution
     400 Tedder Road
     Century, FL 32535-3655

     James C. Carney, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428